## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM PHOENIX, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>    v.<br><br>CUSHMAN & WAKEFIELD U.S., INC.,<br><br>              Defendant. | Case No. 7:24-cv-00965-PMH |

## <u>PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ..................................................................................................... 1

ARGUMENT .......................................................................................................... 2

I.    THE COURT OF APPEALS IS LIKELY TO UPHOLD AN EXPRESS
PRIVATE RIGHT OF ACTION AND REJECT *GRANT* ................................. 2

    A.    Nine Out Of Ten District Courts Who Have Ruled Post-*Grant*
Held The Court Of Appeals Would Side With *Vega* ............................... 2

    B.    The 50+ Cases To Side With *Vega* Pre-*Grant* Did So Because
They Agreed With *Vega*'s Holding .......................................................... 5

    C.    Courts Have Held That A Private Right Of Action Exists Long
Before *Vega* .............................................................................................. 6

    D.    *Grant* Committed Legal Error By Giving Credence To An Illegal
Contract And Ignoring Statutory Text ...................................................... 7

    E.    Wages Become "Unpaid" If Not Paid When They Are Due –
Otherwise There Is No Way To Distinguish Between Late And
Unpaid Wages ........................................................................................... 9

    F.    The Statutory Text And Legislative History Show An Intent To
Create A Private Right Of Action With Liquidated Damages From
Late Payment Of Wages ............................................................................ 12

    G.    NYLL § 218 Does Not Address Violations Of NYLL § 191 And
Thus Can Be Enforced Simultaneously ..................................................... 14

    H.    The New York Department Of Labor Has Explicitly Stated A
Private Right Of Action Exists .................................................................. 16

II.    THE COURT OF APPEALS IS LIKELY TO UPHOLD AN IMPLIED
PRIVATE RIGHT OF ACTION, CONTRARY TO *GRANT* ............................ 17

III.    THE LEGISLATURE'S ACTIONS POST-*VEGA* SHOW THEY
INTENDED FOR A PRIVATE RIGHT OF ACTION ...................................... 18

    A.    The "No Wage Theft Loophole Act of 2021" Shows The New
York Legislature's Support For *Vega*'s Interpretation Of NYLL §
198 ............................................................................................................. 19

    B.    The Legislature's Recent Refusal To Amend The NYLL Further
Shows Its Intent To Provide A Private Right Of Action For
Liquidated Damages .................................................................................. 20

IV.    PLAINTIFF IS ENTITLED TO LIQUIDATED DAMAGES ........................... 21

V.    DEFENDANT'S ARGUMENT TO STRIKE CLASS ALLEGATIONS IS
PREMATURE .................................................................................................. 23

VI.     AN ADMINISTRATIVE CLOSE IS NOT PERMITTED ................................................. 25

CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Barrentine v. Arkansas-Best Freight System, Inc.*,
  450 U.S. 728 (1981) ................................................................................................ 8

*Bazinett v. Pregis LLC*,
  2024 WL 1116287 (N.D.N.Y. Mar. 14, 2024) ................................................ 3, 4, 11

*Belizaire v. Rav Investigative & Sec. Servs.*,
  61 F. Supp. 3d 336 (S.D.N.Y. 2014)......................................................................... 7

*Biggs v. Wilson*,
  1 F.3d 1537 (9th Cir. 1993) ............................................................................... 10, 11

*Birthwright v. Advance Stores Co., Inc.*,
  2024 WL 3202973 (E.D.N.Y. June 27, 2024) ........................................................... 4

*Brooks v. Village of Ridgefield Park*,
  185 F.3d 130 (3d Cir. 1999) .................................................................................... 10

*Brooks v. Village of Ridgefield Park*,
  978 F. Supp. 613 (D.N.J. 1997)............................................................................... 10

*Caul v. Petco Animal Supplies, Inc.*,
  2021 WL 4407856 (E.D.N.Y. Sept. 27, 2021) .......................................................... 6

*Cmty. Care Companions Inc.*,
  2022 WL 5039391 (W.D.N.Y. Sept. 29, 2022) ....................................................... 24

*Cooke v. Frank Brunckhorst Co., LLC*,
  2024 WL 2263087 (E.D.N.Y. May 18, 2024) ..................................................... 3, 4, 5

*Covington v. Childtime Childcare, Inc.*,
  2024 WL 2923702 (N.D.N.Y. June 10, 2024)........................................................... 3

*Cuzco v. Orion Builders, Inc.*,
  2010 WL 2143662 (S.D.N.Y. May 26, 2010) ........................................................... 7

*Davis v. Banana Republic LLC*,
  2023 WL 5969597 (E.D.N.Y. Sept. 14, 2023) ......................................................... 5

*Day v. Tractor Supply Co.*,
  2022 WL 19078129 (W.D.N.Y. Dec. 1, 2022)............................................... 6, 10, 16

*DiBella v. Hopkins*,
  403 F.3d 102 (2d Cir. 2005) ..................................................................... 1

*Engle v. Talarico*,
  33 N.Y.2d 237 (1973) ............................................................................ 18

*Freeland v. Findlay's Tall Timbers Distribution Ctr., LLC*,
  2023 WL 4457911 (W.D.N.Y. July 11, 2023) ........................................ 22

*Galante v. Watermark Servs. IV, LLC*,
  2024 WL 989704 (W.D.N.Y. Mar. 7, 2024) ............................................ 4

*Gamboa v. Regeneron Pharmaceuticals, Inc.*,
  2024 WL 815253 (S.D.N.Y. Feb. 27, 2024)....................................Passim

*Garcia v. Skechers USA Retail, LLC*,
  2024 WL 1142316 (E.D.N.Y. Mar. 15, 2024).............................3, 11, 14

*Georgiou v. Harmon Stores, Inc.*,
  2023 WL 112805 (E.D.N.Y. Jan. 5, 2023) .............................................. 22

*Gottlieb v. Kenneth D. Laub & Co., Inc.*,
  82 N.Y.2d 457 (1993) ............................................................................ 15

*Granados v. Traffic Bar & Rest., Inc.*,
  2016 WL 7410725 (S.D.N.Y. Dec. 21, 2016) ........................................ 13

*Grant v. Global Aircraft Dispatch, Inc.*,
  223 App. Div. 3d 712 (2d Dep't 2024)............................................Passim

*Hammelburger v. Foursome Inn Corp.*,
  54 N.Y.2d 580 (1981) ............................................................................ 18

*Hardgers-Powell v. Angels in Your Home LLC*,
  330 F.R.D. 89 (W.D.N.Y. 2019)............................................................. 24

*Hicks v. T.L. Cannon Corp.*,
  35 F.Supp.3d 329 (W.D.N.Y. 2014) ...................................................... 24

*Knight-Ridder Broad., Inc. v. Greenberg*,
  70 N.Y.2d 151 (1987) ...................................................................... 18, 20

*Konkur v. Utica Academy of Science Charter Sch.*,
  38 N.Y.3d 38 (2022) .............................................................................. 17

*Krawitz v. Five Below, Inc.*,
    2023 WL 6385711 (E.D.N.Y. Sept. 29, 2023) ........................... 5

*Levy v. Endeavor Air Inc.*,
    2024 WL 1422322 (E.D.N.Y. Mar. 29, 2024)....................... 3, 14

*Mabe v. Wal-Mart Associates, Inc.*,
    2022 WL 874311 (N.D.N.Y. Mar. 24, 2022) ...................... 15, 18

*Mabe v. Wal-Mart Assocs., Inc.*,
    2021 WL 1062566 (N.D.N.Y. Mar. 18, 2021) ......................... 15

*Macchiavello v. ABB/CON-CISE Optical Grp. LLC*,
    2023 WL 4625009, n.4 (S.D.N.Y. July 19, 2023) ................... 22

*Malta v. Brown*,
    819 N.Y.S.2d 210 (Civ. Ct. 2006) ...................................... 20

*Martin v. United States*,
    117 Fed. Cl. (2014) ......................................................... 11

*Mazzola v. Roomster Corp.*,
    849 F. Supp. 2d 395 (S.D.N.Y. 2012)................................... 24

*Michalski v. Home Depot, Inc.*,
    225 F.3d 113 (2d Cir. 2000) ............................................... 1

*Moran Towing & Transp. Co. v. N.Y. State Tax Com.*,
    72 N.Y.2d 166 (1988)...................................................... 17

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ............................................... 7

*Parker v. Time Warner Ent. Co., L.P.*,
    331 F.3d 13 (2d Cir. 2003) ............................................... 21

*Pashaian v. Eccelston Properties, Ltd.*,
    1993 WL 322835 (S.D.N.Y. Aug. 16, 1993)........................... 7

*People v. Grass*,
    257 A.D. 1 (1st Dep't 1939) ............................................... 8

*People v. Korkala*,
    472 N.Y.S.2d 310 (1984).................................................. 20

*People v. Robinson*,
  95 N.Y.2d 179 (2000) ........................................................................... 19

*Petrosino v. Fastenal Co.*,
  2023 WL 3496362 (N.D.N.Y. May 17, 2023) ......................................... 5

*Phillips v. Max Finkelstein, Inc.*,
  66 Misc. 3d 514 (N.Y. Co. Ct. 2019) ..................................................... 14

*Phillips v. Max Finkelstein, Inc.*,
  73 Misc. 3d 1 (2d. Dept. 2021) ........................................................ 14, 15

*Poplawski v. Metroplex on the Atl., L.L.C.*,
  2012 WL 1107711 (E.D.N.Y. Apr. 2, 2012) ........................................... 7

*Pozo v. BlueMercury, Inc.*,
  2023 WL 4980217 (S.D.N.Y. Aug. 3, 2023) ...................................... 22, 24

*Rankine v. Levi Strauss & Co.*,
  2023 WL 3582323 (S.D.N.Y. May 22, 2023) ..................................... 16, 18

*Rath v. Jo-Ann Stores, LLC*,
  2022 WL 17324842 (W.D.N.Y. Nov. 29, 2022) ....................................... 5

*Rko-Keith-Orpheum Theatres v. City of New York*,
  127 N.E.2d 284 (1955) ......................................................................... 19

*Rodrigue v. Lowe's Home Centers, LLC*,
  2021 WL 3848268 (E.D.N.Y. Aug. 27, 2021) ....................................... 22

*Rodriguez v. Gusman*,
  974 F.3d 108 (2d Cir. 2020) ................................................................. 25

*Rosario v. Icon Burger Acquisition LLC*,
  2022 WL 17553319 (E.D.N.Y. Dec. 9, 2022) ................................... 17, 22

*Sarmiento v. Flagge Contracting Inc.*,
  2024 WL 806137 (S.D.N.Y. Feb. 27, 2024) ......................................... 3, 4

*Sav. Bank v. O'Neil*,
  324 U.S. 697 (1945) ............................................................................. 10

*Tenn. Coal, Iron & R. Co. v. Musoda Local No. 123*,
  321 U.S. 590 (1944) ............................................................................... 8

*Thomas v. iStar Financial, Inc.*,
   652 F.3d 141 (2d Cir. 2010) ........................................................................... 22

*Truelove v. Northeast Capital & Advisory*,
   95 N.Y.2d 220 (2000) ................................................................................... 15

*Urtubia v. B.A. Victory Corp.*,
   857 F. Supp. 2d 476 (S.D.N.Y. 2012) ............................................................... 7

*V.S. v. Muhammad*,
   595 F.3d 426 (2d Cir. 2010) ............................................................................ 1

*Vega v. CM & Assoc. Constr. Mgt., LLC*,
   175 App. Div. 3d 1144 (1st Dep't 2019) ..................................................... 1, 12

*Wiggins v. Hain Pure Protein Corp.*,
   829 F. Supp. 2d 231 (S.D.N.Y. 2011) ............................................................... 6

*Zachary v. BG Retail, LLC*,
   2024 WL 554174 (S.D.N.Y. Feb. 12, 2024) ................................................Passim

## STATUTES

New York Labor Law Section 191 ...................................................................Passim

## OTHER AUTHORITIES

N.Y. Bill Jacket, 2010 S.B. 8380 .............................................................. 13, 14, 23

**INTRODUCTION**

Defendant is under the misguided belief that the Court must find the Second Department's holding in *Grant v. Global Aircraft Dispatch, Inc.*, 223 App. Div. 3d 712, 714 (2d Dep't 2024) is the only holding that matters in determining whether Plaintiff is entitled to a private right of action and liquidated damages. In making this argument, Defendant compels this court to overlook not only the sound and logical holding of *Vega v. CM & Assoc. Constr. Mgt., LLC*, 175 App. Div. 3d 1144, 1146 (1st Dep't 2019), but also the score of cases to side with *Vega* (both pre and post *Grant*), the statutory text, and the legislative history of the New York Labor Law Section 191.

As the New York Court of Appeals has yet to opine on these issues, "this Court's task is to predict how the [Court of Appeals] would resolve the uncertainty or ambiguity from the conflicting appellate decisions." *Gamboa*, 2024 WL 815253, at *5. In doing so, the federal court "is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010).

In analyzing persuasive evidence, this Court must consider sources the "state's highest court might rely upon in deciding the question." *DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005) (relying on *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000)). This includes attempting "to <u>identify what other courts think about this issue</u>, because this thinking would undoubtedly be taken into account by the New York Court of Appeals if and when it squarely confronts the issue." *Id*. (emphasis added).

In sum, Defendant's arguments "against *Vega*'s reasoning" are "unavailing," as "[n]umerous courts have already considered and rejected them." *Gamboa*, 2024 WL 815253, at

1

*6.  Accordingly, for the reasons stated herein, this Court should join "nearly every other district court in the Second Circuit in adopting *Vega*'s approach and den[y] Defendant's Motion[.]" *Id.*

## ARGUMENT

## I.   THE COURT OF APPEALS IS LIKELY TO UPHOLD AN EXPRESS PRIVATE RIGHT OF ACTION AND REJECT *GRANT*

As discussed *infra*, *Grant* has had little to no effect on the legal landscape of NYLL pay frequency claims because courts pre-*Vega*, post-*Vega*, and post-*Grant* have all found a private right of action to exist.  For these reasons, Plaintiff respectfully submits the Court of Appeals will hold the same, and dismissal is therefore inappropriate.

### A.   Nine Out Of Ten District Courts Who Have Ruled Post-*Grant* Held The Court Of Appeals Would Side With *Vega*

Defendant asserts, "since Grant, a split in authority unquestionably exists, with federal courts attempting to predict how the Court of Appeals will rule."  MTD at 18.  Defendant is wrong.  Ten times thus far, District courts in the Second Circuit have been tasked with predicting whether the Court of Appeals is likely to side with *Vega* or *Grant*.  Nine out of ten federal courts have held that the Court of Appeals will reject *Grant* and uphold *Vega*:

| | |
|---|---|
| *Zachary v. BG Retail, LLC*, 2024 WL 554174 (S.D.N.Y. Feb. 12, 2024, J. Briccetti). | "[T]he reasoning in *Vega* and the dissent in *Grant* persuade the Court that the Court of Appeals would likely agree with *Vega* and reject *Grant*." *Id.* at *7. |
| | "[T]his Court agrees with *Vega* that a late wage claim under Section 191 is privately actionable even if that right is not expressly codified in the NYLL." *Id.* at *8. |
| | "[T]his Court's interpretation of the applicable legislative history supports the outcome reached in *Vega*." *Id.* at *8. |
| *Gamboa v. Regeneron Pharms., Inc.*, 2024 WL 815253 (S.D.N.Y. Feb. 27, 2024, J. Karas). | "This Court finds no reason to deviate from *Zachary*'s well-reasoned analysis and thus concludes that the Court of Appeals is likely to apply *Vega*'s reasoning over *Grant*'s in resolving this issue." *Id.* at *6. |
| | "Moreover, Defendant's other arguments against *Vega*'s reasoning [] are unavailing. Numerous courts have already considered and rejected them." *Id.* at *6 (cleaned up). |

2

| | "[T]his Court joins every other district court in the Second Circuit in adopting *Vega*'s approach." *Id*. at *6. |
|---|---|
| *Sarmiento v. Flagge Contracting Inc.*, 2024 WL 806137 (S.D.N.Y. Feb. 27, 2024, Mag. Cott (adopted by J. Broderick)). | "The *Zachary* court carefully analyzed the decisions in *Vega* and *Grant*, and in agreeing with *Vega*, concluded that a late wage claim under Section 191 is privately actionable 'even if that right is not expressly codified in the NYLL.' To the extent it is necessary to reach that question, I agree with the court's analysis in *Zachary* and recommend it be followed here." *Id*. at *9. |
| *Bazinett v. Pregis LLC*, --- F. Supp. 3d --- , 2024 WL 1116287 (N.D.N.Y. Mar. 14, 2024, J. D'Agostino). | "[B]ased on the reasoning set forth by the vast majority of Courts to continue to follow *Vega*, even in light of *Konkur*, and the dissent in *Grant*, **the Court concludes that the *Grant* majority and the few district court cases questioning *Vega* are not persuasive enough evidence to reject the present coalition of cases upholding *Vega*.** The Court predicts that based on the current legal landscape, the New York Court of Appeals would accept *Vega*." *Id*. at *9 (emphasis added). |
| *Garcia v. Skechers USA Retail, LLC*, 2024 WL 1142316 (E.D.N.Y. Mar. 15, 2024, J. Chen). | "Since *Grant*, several other courts in the Second Circuit have addressed the question of whether Section 191 confers a private right of action, most of which have concluded that the New York Court of Appeals would likely agree with *Vega*… The Court is persuaded by the analysis in *Zachary* and *Gamboa*, and reaches the same conclusion here." *Id*. at *6 (cleaned up). |
| *Levy v. Endeavor Air Inc.*, 2024 WL 1422322 (E.D.N.Y. Mar. 29, 2024, J. Vitaliano). | "Despite the split between the less-than convincing holding of the Second Department and that of the First Department, one would be hard pressed to say that there is substantial ground for difference of opinion, where the weight of authority leans almost unanimously in favor of the existence of a private right of action under § 191." *Id*. at 2 (internal quotations omitted). |
| *Cooke v. Frank Brunckhorst Co., LLC,* 2024 WL 2263087 (E.D.N.Y. May 18, 2024, J. Marutollo). | "[T]wo courts within this District have issued opinions expressly declining to follow Grant." *Id*. at 7. (in reference to *Levy* and *Garcia*).  "This Court sees no valid reason to modify its original ruling or depart from other persuasive rulings from this District. This Court therefore declines to reconsider its application of *Vega* to this instant matter." *Id*. at 9. |
| *Covington v. Childtime Childcare, Inc.*, 2024 WL 2923702 (N.D.N.Y. June 10, 2024, J. Sannes). | "The Court is persuaded by the reasoning of, and the conclusion reached by, the majority of its sister courts and sees no reason to depart from such rulings. Therefore, defendants' motion is denied, insofar as it seeks dismissal of the NYLL § 191 claim, because the Court predicts that the Court of Appeals would agree with the First Department's decision in *Vega* and find that a private right of action (either express or implied) exists for the violation of the pay frequency requirement contemplated by NYLL § 191." *Id*. at 5. |

3

| *Birthwright v. Advance Stores Co., Inc.*, 2024 WL 3202973 (E.D.N.Y. June 27, 2024, J. Brown). | Denying Defendant's motion for reconsideration of its previous denial of Defendant's motion to dismiss in light of *Grant*, holding "this Court ultimately agrees with the detailed and persuasive reasonings set forth in *Zachary*, *Garcia*, *Levy*, and others. Therefore, this Court concludes that the New York Court of Appeals would agree with the holding of *Vega* and find that NYLL §§ 191 and 198 appear to provide for a private right of action." *Id*. at 2. |

The lone decision agreeing with *Grant* is *Galante v. Watermark Servs. IV, LLC*, 2024 WL 989704 (W.D.N.Y. Mar. 7, 2024).  However, the *Bazinett*, *Garcia*, *Levy*, and *Cooke* courts considered *Galante* and still sided with *Vega*.  Moreover, it does not appear the *Galante* court considered the prior recent decisions siding with *Vega* over *Grant*.[1]  *Galante* is nothing more than an outlier opinion that was wrongly decided.

Defendant attempts to distinguish these cases by confusing the issues before the court, arguing that they "largely rest on different facts, different claims, and different procedural postures."  These distinctions (to the extent they even exist) are of no import.  To start, Defendant claims the court in *Sarmiento* "did not reach the issue of whether to adopt *Vega* or *Grant*."  MTD at 19.  Defendant overlooks Footnote 11 of the court's holding, where the court expressly states it agrees with the *Zachary* court's determination to follow *Vega*.  *Sarmiento*, 2024 WL 806137, at *9.  Defendant next contends the outcome of *Bazinett* was due to the defendant's lack of "persuasive evidence" to support its arguments.  MTD at 19.  Not so.  The *Bazinett* court reached its conclusion after conducting its own analysis of *Vega* and *Grant*, ultimately finding the "analysis and conclusion in *Zachary* persuasive."  *Bazinett*, 2024 WL 1116287, at *7.  Lastly, Defendant attempts to discredit the holdings in *Cooke* and *Gamboa* because they cite to pre-*Grant* decisions.  MTD at 19.  Again, Defendant fails to acknowledge that the courts in those cases largely relied on

---

[1] The *Galante* docket indicates that a motion for reconsideration of the decision was filed on June 24, 2024.  Case No. 6:23-cv-06227-FPG-MWP, ECF No. 43.

their own analyses of *Grant* and *Vega*, as well as cases decided after the issuance of *Grant*. *Cooke*, 2024 WL 2263087, at *8 ("Here, neither party acknowledged the *Levy* and *Garcia* decisions, nor the other numerous S.D.N.Y. and N.D.N.Y. decisions declining to follow *Grant* (or *Galante* for that matter)."); *Gamboa*, 2024 WL 815253, at *5 ("This Court agrees with *Zachary*'s analysis.").

Thus, Defendant's contention that "the Court of Appeals is not likely to assign a lot of value to the district court decisions" is meritless. MTD at 19.

### B. The 50+ Cases To Side With *Vega* Pre-*Grant* Did So Because They Agreed With *Vega*'s Holding

Defendant argues Plaintiff's reliance on over 50 cases that sided with *Vega* is "misleading" because "nearly all those cases were bound to follow *Vega* because *Grant* did not exist yet," and that they "routinely noted [] they may not agree with the reasoning in *Vega*." MTD at 16. This is wrong. Out of over 50 courts to agree with *Vega*, Defendant identified six opinions that expressed any doubt over *Vega*'s correctness, yet still sided with it. MTD at 16-17. To the contrary, the vast majority of federal courts adopted *Vega*'s holding because they agreed *Vega* makes sense. "To suggest the Court might 'blindly' follow *Vega* ignores the countless other federal courts in this Circuit that have weighed the same arguments and found that *Vega* supports a private right of action." *Krawitz v. Five Below, Inc.*, 2023 WL 6385711, at *2 (E.D.N.Y. Sept. 29, 2023); *Davis v. Banana Republic LLC*, 2023 WL 5969597, at *8 (E.D.N.Y. Sept. 14, 2023) (holding, "the *Vega* Court's textual analysis of NYLL §§ 191 and 198(1-a) ... [is] a reasonable interpretation of the statutes."); *Petrosino v. Fastenal Co.*, 2023 WL 3496362, at *6 (N.D.N.Y. May 17, 2023) ("[T]he Court disagrees with Defendant's assertions that *Vega* was wrongly decided, should be revisited, and that there is no express private right of action under NYLL § 191."); *Rath v. Jo-Ann Stores, LLC*, 2022 WL 17324842, at *7 (W.D.N.Y. Nov. 29, 2022) ("[I]t is the combination of sections 191 and 198(1-a) that creates an express private right of action for untimely wage payments.

5

Section 191 creates the substantive right for the manual employee to timely and complete wage payments and § 198(1-a) furnishes the procedures and remedies available for violations."); *Day v. Tractor Supply Co.*, 2022 WL 19078129, at *7 (W.D.N.Y. Dec. 1, 2022), report and recommendation adopted, 2023 WL 2560907 (W.D.N.Y. Mar. 17, 2023) (citing amendments to § 198(1-a) to conclude, "as recognized in *Vega* … liquidated damages are the appropriate remedy for violations of § 191."); *Caul v. Petco Animal Supplies, Inc.*, 2021 WL 4407856, at *3 (E.D.N.Y. Sept. 27, 2021) ("*Vega* addressed those general concerns, finding that the purposes of Sections 191 and 198 are to protect employees who are 'dependent upon their wages for sustenance' and deter labor law violations.").

### C.    Courts Have Held That A Private Right Of Action Exists Long Before *Vega*

Defendant contends "Plaintiff simply sidesteps 130 years of cases prior to both *Vega* and *Grant* that consistently (and uncontroversially) held an employee could not individually claim damages for a violation of Section 191 where the employee was paid on a biweekly instead of weekly schedule." MTD at 15-16. Defendant is mistaken.

District courts within the Second Circuit have long held that a private right of action exists under NYLL § 191. For example, in *Wiggins v. Hain Pure Protein Corp.*, 829 F. Supp. 2d 231 (S.D.N.Y. 2011), Judge Cote recognized that "[p]ursuant to § 191, certain kinds of employees can bring a claim for an employer's failure to pay their wages on a certain schedule." *Id.* at 241. In another factually similar case where an employer allegedly failed to comply with NYLL § 191, the plaintiffs moved for summary judgment, and Judge Wood held:

> In this case, Defendants did not pay wages as often as the law requires, and did not pay wages as early as the law requires. Defendants paid wages every two weeks (rather than weekly) and paid these wages no earlier than two weeks after the end of the period in which those wages were earned. These facts are undisputed. Therefore, Plaintiffs [] are entitled to summary

> judgment on their claims that Defendants violated the timely
> payment provisions of NYLL § 191.

*Cuzco v. Orion Builders, Inc.*, 2010 WL 2143662, at *4 (S.D.N.Y. May 26, 2010).

Many other courts have reached the same conclusion. See, e.g., *Myers v. Hertz Corp.*, 624 F.3d 537, 543 (2d Cir. 2010) (holding NYLL § 191 "guarantees the timely payment of wages by employers"); *Pashaian v. Eccelston Properties, Ltd.*, 1993 WL 322835, at *2 (S.D.N.Y. Aug. 16, 1993) (the purpose of NYLL § 191 and its damages provision (NYLL § 198) is to ensure "timely payment" of wages); *Ortiz v. Arthur T. Mott Real Estate, L.L.C.*, 2:15-cv-03940, ECF No. 73 (Order re: Motion to Dismiss) (E.D.N.Y. Sept. 15, 2016) (denying defendant's motion to dismiss plaintiffs' NYLL § 191 claim and stating that NYLL § 191 "guarantees the timely payment of wages by employers"); *Belizaire v. Rav Investigative & Sec. Servs.*, 61 F. Supp. 3d 336, 354 (S.D.N.Y. 2014) (allegation that bounced paychecks resulted in delayed payment of wages was sufficient to set forth a cause of action for "late payments" under New York Labor Law § 191); *Poplawski v. Metroplex on the Atl., L.L.C.*, 2012 WL 1107711, at *12 (E.D.N.Y. Apr. 2, 2012) (granting class certification of NYLL § 191 claims where it was alleged that there was a "failure to pay wages in a timely manner"); *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476 (S.D.N.Y. 2012).

Thus, if Defendant demands "the Court should be directed to all relevant case law," then the Court must consider these cases and deny Defendant's motion.

### D.    *Grant* Committed Legal Error By Giving Credence To An Illegal Contract And Ignoring Statutory Text

Defendant places significant weight on *Grant*'s reasoning that a payment would only become "unpaid" if it had not been paid on the schedule set by the employer's admittedly illegal contract with its employees. *See* MTD at 8-9; *Grant*, 2024 WL 172900, at *3 ("where an employer uses a regular biweekly pay schedule, that employer's payment of wages is due, under the

7

employment agreement between the employer and an employee, every two weeks. Such an agreed-upon pay schedule between an employer and a manual worker violates the frequency of payments requirement (*see* Labor Law § 191[2]), but is not equivalent, in our view, with a nonpayment or underpayment of wages subject to collection with an additional assessment of liquidated damages.").

This error is likely to be remedied by the Court of Appeals if given the opportunity. As the *Zachary* court explained:

> NYLL Section 191(2) provides that "[n]o employee shall be required as a condition of employment to accept wages at periods other than as provided in this section." **A judge's belief that a manual worker should be able to agree to a different payment schedule, and that such agreement should obviate an employer's liability for failing to comply with the law, does not override an overt legislative judgment to the contrary**.

*Zachary*, 2024 WL 554174, at *8 (emphasis added).

Not only is such a contractual arrangement expressly prohibited by the NYLL, it has also been denounced by numerous courts, including the Supreme Court. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740 (1981) (holding wage laws "cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."); *People v. Grass*, 257 A.D. 1, 3 (1st Dep't 1939) ("Contracts in contravention of this provision of the Labor Law are illegal and void."); *Tenn. Coal, Iron & R. Co. v. Musoda Local No. 123*, 321 U.S. 590, 602-03 (1944) ("Any custom or contract falling short of that basic policy, like an agreement to pay less than the minimum wage requirements, cannot be utilized to deprive employees of their statutory rights.").

Defendant further argues "Section 198(1-a) does not support that the term 'underpayment of wages' includes 'late payment of wage' on a biweekly instead of weekly schedule." MTD at 8.

But this portion of § 198(1-a) relates solely to the Commissioner's ability to bring legal action. ("On behalf of any employee paid less than the wage to which he or she is entitled under the provisions of this article, *the commissioner* may bring any legal action necessary…"). As discussed herein, numerous courts have found an express private right of action to exist for untimely "wage claims" in an entirely separate portion of § 198(1-a) that applies "in any action instituted… by *an employee*."

Moreover, the *Grant* court held that § 198(1-a) "was aimed at remedying employers' failure to pay the amount of wages required by contract **or** law." *Grant*, 2024 WL 172900, at *5. Critically, the *Grant* court failed to recognize that employers who do not pay their manual workers weekly fail to pay the amount of wages "required by law"—exactly what, in the *Grant* court's own words, § 198(1-a) "was aimed at remedying."

Although the *Grant* court conceded the plaintiff was deprived of his statutory rights, it nonetheless held that he was without remedy on the basis of a contract to abridge those very rights. This is a very slippery slope. This reasoning could easily be extended to permit employers to enter into agreements to pay manual workers monthly, semiannually, or yearly. Indeed, it could be applied to *any* scenario that was intended to be covered by NYLL § 198, as long as the offending employer strong-armed its employees into an agreement.

Because of this, Defendant's argument that no underpayment has occurred because Plaintiff was paid in accordance with the agreed upon schedule must be rejected. MTD at 9.

**E.    Wages Become "Unpaid" If Not Paid When They Are Due – Otherwise There Is No Way To Distinguish Between Late And Unpaid Wages**

*Vega* made an important point: if wages do not become unpaid once the due date passes, when do they become unpaid? If a week late is not unpaid, how about 8 days late? Or a month, or a year? There is no reasonable place to draw the line other than the actual, statutorily-mandated

due date.  The Ninth Circuit recognized this in *Biggs v. Wilson*, 1 F.3d 1537 (9th Cir. 1993):

"[Defendants] urge us to distinguish between late payment and nonpayment, but offer us no

principled way to make such a distinction.  We cannot come up with one either… Any kind of

sliding scale [] would force employees, employers, and courts alike to guess when 'late payment'

becomes 'nonpayment.'" *Id.* at 1539-1540; *accord Day v. Tractor Supply*, 2022 WL 19078129, at

*6 (W.D.N.Y. Dec. 1, 2022) (citing *Biggs*, noting "both *Vega* and federal district courts have

explained that the late payment of wages is tantamount to a non-payment of wages.").

Other courts have also recognized the problem with *Grant*'s reasoning.  For example, in

*Brooks v. Village of Ridgefield Park*, 978 F. Supp. 613, 617 (D.N.J. 1997), the plaintiff was a K-9

officer in the Village of Ridgefield Police department who challenged the Village's schedule of

paying officers' overtime compensation monthly.  There was no dispute that the officers had

agreed to this payment schedule in their collective bargaining agreement, *see id*. at 617, yet the

plaintiff alleged that the delayed payment of overtime wages violated the FLSA.  The Court granted

summary judgment for the plaintiff, noting:

> [if] an employer is not obligated to compensate an employee for
> overtime worked during a given week on the regular pay day for that
> week, this would lead to an ambiguous standard for determining
> when wages became 'unpaid' under the statute. **Employers would
> then be permitted to withhold overtime compensation for some
> undefined period of time without incurring any legal liability
> and employees would be left with no recourse during this delay.**
> Allowing such a delay in the payment of wages would run counter
> to the primary purpose of the FLSA to "protect certain groups . . .
> from substandard wages and excessive hours."

*Id*. at 618 (emphasis added, citing *Brook. Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945)).  On

appeal, the Third Circuit agreed that the failure to pay overtime "on the regular pay day for the

period in which such workweek ends" violates the FLSA.  *Brooks v. Village of Ridgefield Park*,

185 F.3d 130, 140 (3d Cir. 1999).

Similarly, in *Biggs*, the plaintiffs were a group of state employees who sued for a two-week delay in the payment of wages caused by a budget impasse. *Biggs*, 1 F.3d at 1539-40. The Ninth Circuit reasoned that wages become "unpaid" if they are not paid when due:

> If a payday has passed without payment, the employer cannot have met his obligation to "pay". . . Unless there is a due date after which minimum wages become unpaid, imposing liability for both unpaid minimum wages and liquidated damages would be meaningless. The statute must therefore contemplate a time at which § 206 is violated, or, put another way, when minimum wages become "unpaid." **"Unpaid minimum wages" have to be "unpaid" as of some distinct point, otherwise courts could not compute either the amount of wages which are unpaid, or the additional "equal" amount of liquidated damages.**

*Id.*

In short, a violation of the FLSA occurs when an employee does not receive overtime on his or her regular payday. *Martin v. United States*, 117 Fed. Cl. at 620 (2014).[2] "To hold otherwise would create sufficient uncertainty as to when a violation occurs, and statutory enforcement would prove unworkable." *Id. Grant* would lead to the same incorrect outcome. *See Zachary*, 2024 WL 554174, at *7 ("the late payment of wages is tantamount to a nonpayment or underpayment of wages, which permits recovery under Section 198.") (quoting *Grant*, 2024 WL 172900, at *7 (Christopher, J., concurring in part and dissenting in part)); *accord Gamboa*, 2024 WL 815253, at *5 (same); *Garcia*, 2024 WL 1142316 at *6 (same); *Bazinett*, 2024 WL 1116287, at *9 ("[i]f an employee is not paid any money on the date required by law, he or she was paid below the required amount and was, therefore, underpaid.").

---

[2] To the extent there exists any doubt as to the applicability of FLSA case law to Plaintiff's claims, as addressed below in Section I. F., legislative memorandum for § 198 states it was intended to "follow[] the example of the Federal Fair Labor Standards Act."

**F.    The Statutory Text And Legislative History Show An Intent To Create A Private Right Of Action With Liquidated Damages From Late Payment Of Wages**

NYLL § 198(1-a) expressly provides a private right of action to employees for any "wage claim" in Article 6.  In *Vega*, the First Department noted the obvious:  late payment of wages is a type of wage claim.  *Vega*, 175 A.D. 3d at 1145 ("contrary to defendant's argument that § 198 provides remedies only in the event of nonpayment or partial payment of wages (but not in the event of late payment of wages, the plain language of the statute indicates that individuals may bring suit for any 'wage claim' against an employer")).  This was also acknowledged by the courts in *Zachary*, *Gamboa*, *Bazinett*, *Garcia*, *Levy*, and *Cooke*.  The legislative comments to the Labor Law show that *Vega* (and its progeny) was right:  claims for untimely payment under NYLL § 191 are the precise sort of "wage claims" intended to be covered by NYLL § 198 (1-a).

Defendant argues that *Grant*'s holding is the correct one because it "has provided such a complete analysis of the interplay of the statutory test, scheme and legislative history of Section 191." MTD at 11-12.  But that is wrong.  In 1966, the New York Legislature passed a bill repealing the previous iteration of Article 6 and substituting new language which provides the basis for the current law in place today.  A memorandum accompanying the bill explained that "[t]he  bill clarifies the application of the <u>wage payment provisions</u> for manual workers" by "indicat[ing] that weekly payment of wages applies to manual workers, except those employed by a non-profit organization."  Exhibit 1, Memorandum of the Industrial Commissioner, June 3, 1966, Bill Jacket, L 1966, ch. 548 (pp. 4 of 12) (emphasis added).

Indeed, in 1967, the Legislature enacted Section 198, allowing for a private cause of action with a liquidated damages provision.  According to the memorandum accompanying the bill, its purpose was "[t]o assist the enforcement of the wage payment … laws by imposing greater sanctions on employers for violation of those laws."  Exhibit 2, Memorandum of the Industrial

12

Commissioner, April 5, 1967, Bill Jacket, L 1967, ch. 310 (pp. 6 of 16).  It is clear that, despite Defendant's belief otherwise, this statute is meant to cover "wage payment laws" and was intended to encompass the "wage payment provisions" from one year earlier.

Accordingly, the Legislature explained its intentions clearly at the time it passed the statutes that it was creating a private right of action for liquidated damages specifically to "compensate the employee for the loss of the use of the money to which he was entitled."  Exhibit 2, 5 of 16.  Thus, there is every reason to believe that this was intended to apply to Section 191, which addresses late payments to employees.

Furthermore, the 1967 Memorandum states that the bill was meant to "follow[] the example of the Federal Fair Labor Standards Act in providing an easily-calculable formula for liquidated damages."  Exhibit 2, 6 of 16.  This supports the First Department's reference to the FLSA in interpreting the statute in *Vega*.  In fact, when the statute was originally passed in 1967, it set the amount of liquidated damages at 25%.  Even then, there were detractors.  As the Bill Jacket notes, "[s]ome persons may claim that the imposition of liquidated damages is unreasonable."  *Id.* However, the liquidated damages provision was passed anyway in the hopes that it "would establish one more safeguard to assure employees of proper payment of wages under the law and would thus be a deterrent against abuses and violations."  *Id.*

Lastly, the statute was amended in 2010 to raise the amount of liquidated damages from 25% to 100%.  *See Granados v. Traffic Bar & Rest., Inc.*, 2016 WL 7410725, at *4 (S.D.N.Y. Dec. 21, 2016), *report and recommendation adopted*, 2017 WL 1184277 (S.D.N.Y. Mar. 29, 2017) (citing N.Y. Bill Jacket, 2010 S.B. 8380 ch. 564, at 8).  The Legislature explained that the 25% "penalties currently in place for employers paying less than minimum wage are minimal and offer little deterrent" and that raising the number to 100% was needed to "better protect workers' rights

and interests." N.Y. Bill Jacket, 2010 S.B. 8380 ch. 564, at 8. This is all in line with *Vega*'s reasoning that violation of §191's provisions give rise to a private cause of action for liquidated damages. *See Zachary*, 2024 WL 554174, at *8 ("In addition, the stated legislative purposes of the 2010 amendments—i.e., to enhance penalties for wage theft and benefit low-wage workers struggling to support their families—are unquestionably better served by a private right to enforce Section 191 than by requiring injured employees to submit administrative complaints and hope for an official enforcement action."); *Garcia*, 2024 WL 1142316, at *6 ("Despite *Grant*'s contrary assertion, the legislative history also supports this interpretation."); *Levy*, 2024 WL 1422322, at *2 ("2010 amendments to § 198 intend[ ] to allow employees to recover the full amount of any underpayments—an intention best served by recognizing that 'money has a real time value,' and thus a late payment is a qualifying underpayment."); *Gamboa*, 2024 WL 815253, at *6 (holding that the defendant's argument against *Vega*'s reasoning that "the plain language of the statute and the NYLL's structure contradict the notion that the Legislature intended to create a private right of action for untimely wage claims… are unavailing.").

### G.    NYLL § 218 Does Not Address Violations Of NYLL § 191 And Thus Can Be Enforced Simultaneously

Defendant cites to § 218 in arguing that a "violation of Section 191 is not a 'wage claim'" because violations under Article 6 are "categorized into: (1) wage claims, which are brought for failing to pay 'wages, benefits, or wage supplements found to be due,' and (2) non-wage claims, which are brought 'for a reason other than the employer's failure to pay wages.'" MTD at 10. This argument has been rejected numerous times by courts. For instance, in *Phillips v. Max Finkelstein, Inc.,* 73 Misc. 3d 1 (2d. Dept. 2021)[3], the court found that "[a]lthough section 218

---

[3] To support its argument that district courts have disagreed with Vega, Defendant relies on *Phillips v. Max Finkelstein, Inc.*, 66 Misc. 3d 514 (N.Y. Co. Ct. 2019). This is no longer good law, as it was reversed by the Second Department, finding *Vega* as the controlling law.

14

authorizes the Commissioner to impose civil penalties for violations of article six of the Labor

Law, <u>it does not preclude private causes of action</u>."  73 Misc. 3d, at 3-4 (emphasis added).  "Labor

Law § 198, which authorizes the Commissioner to bring 'any legal action necessary' on behalf of

'any employee paid less than the wage to which he or she is entitled' [] also specifically authorizes

wage claims by employees, and states that the remedies provided by article 6 of the Labor Law

'**may be enforced simultaneously or consecutively so far as not inconsistent with each other**.'"

*Id.* at 4 (internal citations omitted) (emphasis added).

   Defendant does not argue that a private right of action is not available pursuant to Article

6 of the NYLL, which covers Plaintiff's instant claim.  *See Gottlieb v. Kenneth D. Laub & Co.,*

*Inc.*, 82 N.Y.2d 457 at 461 (1993) ("the statutory provision in [NYLL] article 6 which generally

regulates payment of wages by employers and creates reciprocal rights of employees is Labor Law

§ 191"); *Truelove v. Northeast Capital & Advisory*, 95 N.Y.2d 220, 224-225 (2000) ("an employer

[is] subject to both civil and criminal liability for failing to pay 'wages' as required by [NYLL §

191]").

   Moreover, there is no conflicting language between Section 198 and Section 218.  *See*

NYLL § 218(4) ("…the civil penalty provided for in this section shall be in addition to and may

be imposed concurrently with any other remedy or penalty provided for in this chapter"); NYLL

§ 198(2) ("…the remedies provided by this article may be enforced simultaneously or

consecutively so far as not inconsistent with each other").

   Accordingly, the existence of a regulatory mechanism does not eliminate the structure of

Article 6, which permits employees to privately enforce wage claims.  Section 198(1-a) "provides

for an express private right of action for underpayment of wages."  *Mabe v. Wal-Mart Associates,*

*Inc.*, 2022 WL 874311, at *6 (N.D.N.Y. Mar. 24, 2022); *see also Mabe v. Wal-Mart Assocs., Inc.*,

2021 WL 1062566, at *2 (N.D.N.Y. Mar. 18, 2021) (rejecting argument "that the New York State Legislature vested exclusive responsibility to police violations of this provision in the Commissioner of the Department of Labor."); *Day v. Tractor Supply Co.*, 2022 WL 19078129, at *5 (W.D.N.Y. Dec. 1, 2022), *report and recommendation adopted*, 2023 WL 2560907 (W.D.N.Y. Mar. 17, 2023) (rejecting argument "that civil penalties imposed by the DOL under NYLL § 218 are the appropriate remedy for violations of § 191"); *Rankine v. Levi Strauss & Co.*, 2023 WL 3582323, at *6 (S.D.N.Y. May 22, 2023) (rejecting argument "that *Vega* is inconsistent with enforcement schemes for violations of the NYLL").

### H.    The New York Department Of Labor Has Explicitly Stated A Private Right Of Action Exists

Citing to the New York DOL's website instructions for filing claims, Defendant argues the "New York Department of Labor ("DOL") – an agency charged with protecting workers' rights" agrees with the holding in *Grant*.  MTD at 10.  Not so.  As a preliminary matter, a form on a website is not persuasive authority. More importantly, the New York DOL has made it explicitly clear that Section 218 and Section 191, specifically in relation to untimely wages, can be enforced simultaneously.  In an October 28, 2010 Opinion Letter, the New York DOL reiterated that NYLL § 191 is enforceable by a private right of action.  *See* Exhibit 3, RO-10-0003.  In response to the employer's question as to whether employees may be required to "sign-off" on their timesheets, the Department of Labor responded that:

> Section 191 of the Labor Law requires the timely payment in full of an employee's agreed upon wages and sets forth the frequency of such payments for particular categories of employees.  For example, manual workers must be paid weekly and not later than seven days after the end of the week in which their wages are earned ….  While an employer can require an employee to sign off on their weekly timesheet, the employee's signature on a weekly timesheet neither relieves the employer of its obligations under []Section [191], **nor does it prevent an employee from filing a complaint with this**

16

**Department or bringing an action for a violation of [NYLL § 191.]**"

*Id*. at 4 (emphasis added).  Thus, it is the view of New York's DOL that employees are empowered to bring private suits for violations of NYLL § 191.

The "[i]nterpretation of a statute by the agency charged with its enforcement is, as a general matter, given great weight and judicial deference so long as the interpretation is neither irrational, unreasonable nor inconsistent with the governing statute." *Moran Towing & Transp. Co. v. N.Y. State Tax Com.*, 72 N.Y.2d 166, 173 (1988).  Therefore, the DOL's opinion letter represents the agency's interpretation of NYLL § 191 and should be given judicial deference.

## II.     THE COURT OF APPEALS IS LIKELY TO UPHOLD AN IMPLIED PRIVATE RIGHT OF ACTION, CONTRARY TO *GRANT*

There is no reason to reach the question of whether there is an implied cause of action if the Court agrees that an express cause of action exists.  But even if the Court does not agree there is an express cause of action, it should still find that there is an implied claim.  Defendant, as well as *Grant,* incorrectly relies on *Konkur v. Utica Academy of Science Charter Sch*., 38 N.Y.3d 38 (2022) to support the proposition that there is not an implied private right of action for violation of NYLL § 191(1)(a).  MTD at 17.  As Judge Briccetti explained:

> The *Grant* majority… determined, based on *Konkur*, that creation of an implied private right of action would be inconsistent with the legislative scheme because "multiple official enforcement mechanisms" exist to enforce violations of Section 191.  However, in *Konkur*, the Court of Appeals distinguished the anti-kickback statute, from which a private right could not be inferred, from the "substantive provisions of Labor Law article 6," like Section 191, which "regulates payment of wages by employers and creates reciprocal rights of employees." *Konkur*, 38 N.Y.3d at 44, 185 N.E.3d 483.  **More broadly, the fact that *Konkur* analyzes a wholly separate provision in the NYLL led several federal courts, prior to *Grant*, to adhere to *Vega* and imply a private right of action to address Section 191 violations notwithstanding *Konkur*.**  See, e.g., *Rosario v. Icon Burger Acquisition LLC*, 2022 WL 17553319, at *5 (E.D.N.Y. Dec. 9, 2022) ("[S]everal district

courts within this Circuit have already analyzed this issue and all have concurred that <u>Konkur</u> does not affect the core holding of *Vega*."). **Thus, this Court agrees with the dissent in *Grant* that *Konkur* does not suffice to overcome the sound reasoning of *Vega* that a private right to enforce Section 191 violations may be implied.**

*Zachary*, 2024 WL 554174, at \*8 (internal citation omitted). The Court should adopt the same reasoning here. *See also Mabe v. Wal-Mart Assoc. Inc.*, 2022 WL 874311, at \*6 ("*Konkur* does not directly contradict the *Vega* Court's determination that the late payment of wages is an underpayment of wages."); *Gamboa*, 2024 WL 815253, at \*5-6 ("As for an implied right of action, both *Zachary* and various other district courts in the Second Circuit have rejected Grant's approach. … Indeed, even prior to *Grant*, several other district courts rejected *Konkur*'s application to Section 191. … This Court finds no reason to deviate from *Zachary*'s well-reasoned analysis and thus concludes that the Court of Appeals is likely to apply *Vega*'s reasoning over *Grant*'s in resolving this issue."); *Rankine v. Levi Strauss & Co.*, 674 F. Supp. 3d 57 (S.D.N.Y. 2023) ("This Court joins the many others in this Circuit that have found *Konkur* insufficient to support a conclusion that the Court of Appeals will overturn *Vega*.").

## III. THE LEGISLATURE'S ACTIONS POST-*VEGA* SHOW THEY INTENDED FOR A PRIVATE RIGHT OF ACTION

The New York Court of Appeals has held that "[i]t is well settled that the legislative history of a particular enactment must be reviewed in light of the existing decisional law which the Legislature is presumed to be familiar with and to the extent it left it unchanged, that it accepted." *Knight-Ridder Broad., Inc. v. Greenberg*, 70 N.Y.2d 151, 157 (1987), *see also Arbegast v. Board of Educ.*, N.Y.S.2d 751 (1985); *Hammelburger v. Foursome Inn Corp.*, 54 N.Y.2d 580, 588 (1981). Thus, "where the practical construction of a statute is well known, the Legislature is charged with knowledge and its failure to interfere indicates acquiescence." *Engle v. Talarico*, 33

N.Y.2d 237, 242 (1973) (quoting *Rko-Keith-Orpheum Theatres v. City of New York*, 127 N.E.2d 284, 287 (1955)).

Here, as discussed *infra*, the practical construction of NYLL as applied to untimely wage claims is well known to the Legislature, yet it has chosen not to intervene.  This alone warrants a finding that the Court of Appeals will side with the holding in *Vega*.

### A.    The "No Wage Theft Loophole Act of 2021" Shows The New York Legislature's Support For *Vega*'s Interpretation Of NYLL § 198

Defendant's reliance on the 2010 amendment to New York's Wage Theft Prevention Act (MTD at 12) is moot in light of the 2021 amendment to Article 6 of the New York Labor Law, and in particular, Section 198.  L. 2021, c. 397.  Indeed, the purpose of the Act was to provide **"clari[t]y for the courts once and for all"** in their analysis of the statute.  *Id.* (emphasis added). In doing so, the Legislature left the portions relevant to frequency of pay claims untouched.

By the time the Act was passed, *Vega*'s holding was widely accepted.  "[I]n amending the statute … the Legislature was presumably aware of all existing decisions interpreting it."  *People v. Robinson*, 95 N.Y.2d 179, 184 (2000) (citation omitted).  Those myriad decisions followed *Vega* when construing section 191.  "That the Legislature chose not to narrow the statutory language [when Article 6 was amended in 2021] despite these decisions evinces an intent to apply the statute as written."  *Robinson*, 95 N.Y.2d at 184 (citation omitted); *see also Zachary*, 2024 WL 554174, at *8 ("Moreover, this Court's interpretation of the applicable legislative history supports the outcome reached in *Vega*. As the Grant majority acknowledges, money has a real time value, and the 2010 amendments to Section 198 were intended to allow employees 'to recover the full amount of any underpayment.' *Grant*, 2024 WL 172900, at *5. In addition, the stated legislative purposes of the 2010 amendments—i.e., to enhance penalties for wage theft and benefit low-wage workers struggling to support their families—are unquestionably better served by a

private right to enforce Section 191 than by requiring injured employees to submit administrative complaints and hope for an official enforcement action.").

**B.** **The Legislature's Recent Refusal To Amend The NYLL Further Shows Its Intent To Provide A Private Right Of Action For Liquidated Damages**

In Governor Hochul's proposed New York State Executive Budget for 2025, she called for amending Section 198 to make explicitly clear "liquidated damages shall not be applicable to violations of [191] where the employee was paid in accordance with the agreed terms of employment, but not less frequently than semi-monthly."[4]  However, the legislature removed this language entirely before approving the budget, rendering the statute to remain as it currently reads, and clearly as it is currently applied by courts – a private right of action exists in these cases, and an agreed upon payment schedule cannot bypass that.

The New York Court of Appeals has explained the significance of legislative decisions to omit or include certain changes to a law. In, *Knight-Ridder Broadcasting, Inc. v. Greenberg*, 70 N.Y.2d 151 (1987), the New York Court of Appeals addressed whether the state legislature intended to include a confidentiality prerequisite.  The court held:

> [t]he Legislature's refusal to repudiate that interpretation, despite an explicit proposal to that effect, is compellingly persuasive evidence of the legislative intent… In fact, the Legislature was aware in 1981 that the controlling authority in every judicial department in this State required confidentiality; indeed, it was for this reason that the sponsor of the proposed amendment sought to amend the statute. **Under these circumstances, the failure of the Legislature to adopt the proposed amendment abrogating the confidentiality requirement is persuasive evidence of the legislative intent.**

*Id*. at 159-160. *See also Malta v. Brown*, 819 N.Y.S.2d 210 (Civ. Ct. 2006) (holding that "[t]he Legislature's rejection of" amendment proposals to limit the number of apartment an owner may regain "implies that the Legislature permits an owner to recover more than one."); *People v.*

---

[4]  https://www.budget.ny.gov/pubs/archive/fy25/ex/artvii/elfa-bill.pdf.

*Korkala*, 472 N.Y.S.2d 310, 313 (1984) ("rejection of a specific statutory provision is a significant consideration when diving legislative intent.").

It is without question the Legislature is aware of the current trend in litigation involving untimely wage claims. In fact, just as the sponsor in *Greenberg*, Governor Hochul was clear in her desire to target current litigation, as her memo in support of her proposal points to *Vega* and states "[l]awsuits of this kind are increasing in frequency against large and small businesses and resulting in large payouts[.]"[5] Despite this knowledge, the Legislature rejected Governor Hochul's proposed amendment entirely, indicating a clear intention for the current statute to remain as is.

## IV.    PLAINTIFF IS ENTITLED TO LIQUIDATED DAMAGES

Defendant argues that even if Plaintiff has a private right of action, "the Complaint must be dismissed for lack of subject matter jurisdiction because Plaintiff is not entitled to liquidated damages." MTD at 20. While Plaintiff has made clear he is entitled to liquidated damages, Defendant's request that the Court declare unconstitutional a yet-to-be-rendered, hypothetical award of classwide damages is improper and premature.

The Second Circuit addressed this very issue in *Parker v. Time Warner Ent. Co.*, L.P., 331 F.3d 13, 22 (2d Cir. 2003). There, the Second Circuit held, "[a]t this point in this case, however, these concerns remain hypothetical. There has been no class certification motion filed nor any actual evidence presented that raises a reasonable possibility that principles of due process may restrict an ultimate damages award. Accordingly, we decline to consider what limits the due process clause may impose." Here too, there has not even been a determination of who the class is comprised of, let alone what potential damages would be. And of course, there has been no jury award of damages.

---

[5]  https://www.budget.ny.gov/pubs/archive/fy25/ex/artvii/elfa-memo.pdf.

It is for these reasons courts have continuously denied Defendant's same arguments in other NYLL § 191 cases. As Judge Briccetti explained, "Defendant's argument that imposing liquidated damages violates due process because such a remedy would be unconstitutionally excessive is premature. No damages have been awarded, so there is no award for the Court to assess for excessiveness." (internal citation omitted). *Macchiavello v. ABB/CON-CISE Optical Grp. LLC*, 2023 WL 4625009, at *4, n.4 (S.D.N.Y. July 19, 2023); *see also Freeland v. Findlay's Tall Timbers Distribution Ctr., LLC*, 2023 WL 4457911, at *11 (W.D.N.Y. July 11, 2023) ("Even assuming that the damages Plaintiff seeks would be treated as punitive for Due Process Clause purposes, Defendant's constitutional challenges are premature. There has been no award of damages and there is no record on which to assess whether such an award would be excessive in light of 'the degree of reprehensibility of the defendant's misconduct.' 'the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award,' and 'the difference between the punitive damages awarded ... and the civil penalties authorized or imposed in comparable cases.'") (citing *Thomas v. iStar Financial, Inc.*, 652 F.3d 141, 149 (2d Cir. 2010)); *Rodrigue*, 2021 WL 3848268, at *6 (E.D.N.Y. Aug. 27, 2021) (holding "a challenge of this sort is premature" because "[a]t this stage of the case, there has been no liquidated damages award"); *Georgiou v. Harmon Stores, Inc.*, 2023 WL 112805, at *6 (E.D.N.Y. Jan. 5, 2023) ("defendant's due process challenge is premature. No damages have been awarded, so there is no award for me to assess for excessiveness."); *Pozo*, 2023 WL 4980217, at *4 n.7 (holding the defendant's due process argument was "premature"); *Rosario v. Icon Burger Acquisition LLC*, 2022 WL 17553319, at *5 (E.D.N.Y. Dec. 9, 2022) ("while Defendant may ultimately be correct that the 'potential liquidated damages recovery [in this case] will astronomically exceed the actual claimed, 'time

value of money' injuries pleaded by the Plaintiffs,' … this argument is premature at the dismissal stage.").

Defendant also argues that the Court should dismiss Plaintiff's claim for liquidated damages because it "would lead to an absurd result." MTD at 21. As noted earlier, the Legislature first set liquidated damages at 25%. Even then, there were detractors. As the Bill Jacket notes, "[s]ome persons may claim that the imposition of liquidated damages is unreasonable." Exhibit 2, Memorandum of the Industrial Commissioner, April 5, 1967, Bill Jacket, L 1967, ch. 310. However, the liquidated damages provision was passed anyway in the hopes that it "would establish one more safeguard to assure employees of proper payment of wages under the law and would thus be a deterrent against abuses and violations." *Id.*

In 2010, the Legislature raised the amount of liquidated damages from 25% to 100%, explaining that the 25% "penalties currently in place for employers paying less than minimum wage are minimal and offer little deterrent" and that raising the number to 100% was needed to "better protect workers' rights and interests." N.Y. Bill Jacket, 2010 S.B. 8380 ch. 564, at 8.

These provisions were a direct response to large corporations, like Defendant, trampling over the wage rights of the most disadvantaged New York workers. Defendant's full-length brief does not once deny that it was breaking the law – it is simply complaining that it faces liability now that it was caught. This much is clear: the Legislature set these penalties to deter bad actors like Defendant from breaking the law. Had it not done so, Defendant would still be breaking the law to this day.

## V.    DEFENDANT'S ARGUMENT TO STRIKE CLASS ALLEGATIONS IS PREMATURE

Defendant argues Plaintiff's allegations "must be striken" because they "seek to define an impermissible 'fail-safe' class" and "fail to generate common answers to drive the resolution of

this litigation."  MTD at 24.  Not so.

"A fail-safe class is one whose definition shields the putative class members from receiving an adverse judgment." *Hicks v. T.L. Cannon Corp.*, 35 F.Supp.3d 329, 356 (W.D.N.Y. 2014). There is no fail-safe class here because if Defendant prevails on its arguments as to private right of action, no class member will be shielded from said adverse judgment. "The mere fact that the subclass definition includes the factual predicates for a successful claim does not, by itself, present a barrier to certification." *Hardgers-Powell v. Angels in Your Home LLC*, 330 F.R.D. 89, 102 (W.D.N.Y. 2019) (internal citation omitted).  Moreover, Plaintiff can narrow or add detail to the class definition based on information learned in discovery.  For this reason, a motion to strike would be "premature and depend[] in part on the outcome of discovery as to the plaintiff's allegations." *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012).

For this reason, every other court to confront this argument in the NYLL § 191 context has rejected it.  *Pozo v. BlueMercury, Inc.*, 2023 WL 4980217, at *8 (S.D.N.Y. Aug. 3, 2023) ("The question of whether the class allegation constitutes a 'fail-safe' class is best resolved at the class certification stage. … Therefore, the Court denies Defendant's motion to strike Plaintiff's class allegations."); *Beh v. Cmty. Care Companions Inc.*, 2022 WL 5039391, at *10 (W.D.N.Y. Sept. 29, 2022), *report and recommendation adopted*, 2023 WL 1969370 (W.D.N.Y. Jan. 26, 2023) ("Further, the Court rejects defendants' contention that this subclass definition creates a 'fail-safe' class. … Here, the subclass definition does not presume that any worker is entitled to wage payment within seven days, nor that any untimely payment constitutes a violation of the law."); *Zachary*, 2024 WL 554174, at *9 ("[defendant's] liability for purposes of the Section 191 Claim turns on whether defendant timely paid its manual workers. Conversely, whether a particular employee is a manual worker because physical tasks comprise at least twenty-five percent of their

24

duties bears on whether the putative class satisfies the commonality and predominance requirements of Rule 23.").

## VI.    AN ADMINISTRATIVE CLOSE IS NOT PERMITTED

The Second Circuit has held administrative closure, "as one of the 'most drastic alternatives' available to a district court, should be used sparingly and only as a last resort." *Rodriguez v. Gusman*, 974 F.3d 108, 112 (2d Cir. 2020).  In order for a court to do so, it must find that "other alternatives must be virtually impossible, or so impractical as to significantly interfere with the operations of the district court or impose an unreasonable burden on the party opposing the plaintiff's claim." *Id*.

This standard cannot be met.  As Defendant points out, other courts to address continuance of a case in light of the present department split have merely stayed the case, and did not go as far as to administratively close the cases.  MTD at 24.  Thus, other alternatives, such as a stay, are possible.

As discussed *supra*, Plaintiff is confident that should the Court of Appeals provide guidance to the present department split, it will do so in favor of *Vega*, and therefore this case should proceed.  Importantly, the Court of Appeals has yet to agree to take the case.  However, should this Court be inclined to withhold a decision until such guidance is issued, the Court should stay the case rather than administratively close the case.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendant's motion.

Dated: July 22, 2024                                         Respectfully submitted,

By:   */s/ Yitzchak Kopel*

**BURSOR & FISHER, P.A.**
Yitzchak Kopel
Alec M. Leslie
1330 Avenue of the Americas
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email: ykopel@bursor.com
         aleslie@bursor.com

*Attorneys for Plaintiff*