UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM PHOENIX, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>CUSHMAN & WAKEFIELD U.S., INC.,<br><br>　　　　　Defendant. | Case No. 7:24-cv-00965 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Date of Service:　　　　　　　　　　KELLEY DRYE & WARREN LLP
August 5, 2024　　　　　　　　　　　3 World Trade Center
　　　　　　　　　　　　　　　　　　175 Greenwich Street
　　　　　　　　　　　　　　　　　　New York, New York 10007
　　　　　　　　　　　　　　　　　　(212) 808-7800
　　　　　　　　　　　　　　　　　　*Attorneys for Defendant*

**INTRODUCTION**

Defendant Cushman & Wakefield U.S., Inc. ("Cushman" or "Defendant"), by and through its undersigned counsel, submits this Reply Memorandum of Law in further support of its Motion to Dismiss Plaintiff William Phoenix's ("Phoenix" or "Plaintiff") Complaint, individually and on behalf of all others similarly situated.

**ARGUMENT**

**I.   The Opposition Fails to Address Defendant's Central Argument that the Language in *Grant* is More Thorough and Well-Reasoned Than *Vega*.**

Plaintiff's opposition claims that Defendant is asking this Court to "overlook" the "sound and logical holding" of *Vega v. CM & Assoc. Constr. Mgt., LLC,* 175 App. Div. 3d 1144 (1st Dep't 2019). Opp'n at 1. The opposite is true. In fact, Defendant welcomes a direct comparison of the basis of *Vega*'s holding—essentially, that Section 191 has an implied punitive purpose based on a single dictionary definition—to the basis of the holding in *Grant v. Global Aircraft Dispatch, Inc.,* 223 App. Div. 3d 712 (2d Dep't 2024), *i.e.*, an unusually exhaustive consideration and analysis of statutory history, legislative intent, and a range of New York Labor Law provisions. Such direct comparison can only lead to the conclusion that the thin logic of *Vega* does not even begin to stand up to *Grant*: read side by side, it is (quite literally) visually obvious that what *Vega* dictates with the back of its hand, *Grant* resolves differently with exceedingly persuasive logic.

**A.   The Opposition Does Not Meaningfully Address the Language of *Grant* and *Vega***

The parties agree that this Court must predict how the New York Court of Appeals will rule. MTD at 5; Opp'n at 1. Plaintiff appears to believe that this exercise is entirely mechanical: stack up cases consistent with *Vega* on one side of a scale, and with *Grant* on the other, and then say that the Court of Appeals will side with *Vega* simply because the numerical scale tips in one direction—as if New York's highest court will not actually think independently about the statutory,

legislative and logical underpinnings of those rulings. *See* Opp'n at 2-5. That cannot be right. *See Espinal v. Sephora USA, Inc.,* 2024 U.S. Dist. LEXIS 135372, at *8 (S.D.N.Y. July 31, 2024) ("We begin by agreeing with [the defendant] that the issue presented 'is not answered by reviewing how many decisions followed Vega prior to the Grant decision, nor how many decisions follow Vega after.'").

To the contrary, the parties also agree (*see* Opp'n at 1) that where a federal court is tasked with interpreting state law, the court "is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is *persuasive evidence* that the state's highest court would reach a different conclusion." *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010) (emphasis added). In applying this standard, federal courts must "[p]rincipally . . . consider the language of the state intermediate appellate courts [as] helpful indicators of how the state's highest court would rule." *DiBella v. Hopkins,* 403 F.3d 102, 112 (2d Cir. 2005).

Accordingly, the Court of Appeals, if it does its usual job, will consider the genuine merits of the respective analyses of *Grant* and *Vega*—merits which this Court can and must consider on the pending motion. *See Espinal,* 2024 U.S. Dist. LEXIS 135372 at *8 (noting that the district court must "reach [its] own determination" in finding the language in *Grant* more persuasive than the language in *Vega*). And, Defendant respectfully submits, that consideration can lead to only one reasonable conclusion; namely, that Section 191 does not say Plaintiff can proceed, and was never designed or intended to be read to allow Plaintiff to proceed, on a claim to recover punitive damages in the absence of any actual harm to him or any actual violation of Defendant's basic obligation to pay him and others all duly owed wages, which it undisputedly did in full (*see* Dkt. 1, ¶ 4).

The *Grant* court methodically analyzed the statutory text, legislative history and statutory

2

scheme of Section 191 and Section 198, and *Grant* is the highest, and **only**, authority to interpret the New York Court of Appeal's decision in *Konkur v. Utica Acad. Of Sci. Charter Sch.,* 38 N.Y.3d 38 (2022). (Dkt. 12 at 2); MTD at 5-6. In contrast, the *Vega* court relied on a single assertion, from a single word, from a single dictionary definition. *See* MTD at 8. It is thus self-evident that *Vega* does not come close to withstanding the far more thorough and logically compelling analysis of *Grant*. (Dkt. 12 at 3); MTD at 5-6. For all Plaintiff's case-counting (which, as explained below, has become more modest and less supposedly decisive as the briefing has progressed), Plaintiff completely fails to address the "language of the state intermediate appellate courts." *DiBella,* 403 F.3d at 112.[1] Plaintiff also fails to mention, let alone analyze, why the Court of Appeals is likely to find the seven-paragraph decision in *Vega* more persuasive than *Grant*'s exhaustive analysis.

Plaintiff's attempt to distract the Court with a recitation of non-binding federal court decisions (*see* Opp'n at 2-4) is understandable given the opposition's reluctance to meaningfully defend *Vega* or to engage with *Grant*. And even with regard to that largely meaningless exercise, Plaintiff has greatly moderated his initial assertions about the "unquestionable" support of *Vega*. Indeed, Plaintiff's previous assertion that "[s]ince *Vega*, over fifty district courts unanimously followed *Vega's* ruling" (Dkt. 13 at 2) is a far cry from his current contention that "nine of out ten" courts have followed *Vega*. Opp'n at 2. In a similar vein, the opposition (i) studiously avoids addressing in its arithmetic the entire picture of federal court decisions since *Grant*, most notably in *Urena v. Sonder USA Inc.,* 2024 U.S. Dist. LEXIS 60014 (S.D.N.Y. Mar. 28, 2024), which stayed that matter until the Court of Appeals rules and (ii) did not have the opportunity to include the most recent Southern District of New York decision predicting that the Court of Appeals would

---

[1] In total, the opposition refers to the "sound and logical holding of Vega" on its first page but never returns to that point, and cites *Vega* (without analysis) only one additional time. *See* Opp'n at 1, 12.

3

follow the reasoning *Grant*. *See Espinal,* 2024 U.S. Dist. LEXIS 135372 at *23 ([W]e agree with the district court in Galante, 2024 WL 989704, at *10, and predict that the New York Court of Appeals would follow the Second Department's decision in Grant."). Bald numbers aside, a fair consideration of the *substance* of the whole range of federal judicial authority can only underscore one point: the support for *Vega* is far from unanimous, and support of *Grant* is far from negligible. This Court must consider the merits for itself.

### B. Having Ignored *Vega* and *Grant*, Plaintiff Offers a Mish-Mash of Other Unavailing Arguments

To the extent that Plaintiff does engage in the case law, Plaintiff cites inapposite cases to argue that a private right of action for a violation of Section 191 existed prior to the decision in *Vega*. Each case cited by Plaintiff in this regard (*see* Opp'n at 6-7) involved the underlying failure to pay owed wages (*i.e.*, failure to pay bonus, overtime, minimum wage, or for all hours worked under contract). Not one pre-*Vega* case cited by Plaintiff held that an employee is granted a private right of action for a violation of Section 191 where the employee was paid all due wages on a bi-weekly, instead of weekly, basis. Again, the issue before this Court is not whether Defendant violated any Article 6 obligation to pay wages—the parties do not dispute that Defendant paid Plaintiff and other employees in full (*see* Dkt. 1, ¶ 4). It is whether a purely technical Section 191 "frequency of pay violation," without actual underlying damages, grants Plaintiff a private right of action. The cases cited by Plaintiff prior to the decision in *Vega* simply do not stand for such a proposition.

Not having engaged with *Grant* or having cited cases with facts similar to those in this litigation, Plaintiff warns this Court of a classic (and imaginary) "slippery slope": be careful, because following *Grant* and ruling for Defendant here will invite employers to ignore pay frequency requirements altogether (*see* Opp'n at 9), as if a court-made double-penalty windfall

4

was the only way to encourage compliance. This argument ignores what Section 191 affirmatively provides, namely, fines issued by the New York Department of Labor in administrative or civil proceedings. *See* New York Labor Law § 218. *Grant*'s holding is consistent with this scheme of civil enforcement. That is, *Grant* considered the fact that the Legislature prescribed civil penalties for frequency-of pay violations, and then went on to conclude that there is no private right of action to recover liquidated damages. *Grant*, 223 App. Div. 3d at 718-719.

Quite apart from any *Grant v. Vega* debate, the "slippery slope" argument also ignores that state and federal law already protects employees against objectively unreasonable pay dates. An employee has a claim under the Fair Labor Standards Act or New York Labor Law when an employer chooses a regular pay date that is objectively unreasonable. *See Benavides v. Miami Atlanta Airfreight, Inc.*, 322 F. App'x 746, 747 (11th Cir. 2009) (noting that the "regular payment date" may be "so far distant from the pay period to which payment relates to state a violation of the FLSA minimum wage" but finding a payroll that paid employees more than one week after the work was performed compliant with FLSA); *Rogers v. City of Troy*, 148 F.3d 52, 58 (2d Cir. 1998) (finding the prompt payment requirement under the FLSA is determined by reference to objective standards). Therefore, an employee retains the ability to redress any wrong if an employer "strong-arms" the employee into an agreement to be paid "semiannually, or yearly." *See* Opp'n at 9. Plaintiff's attempt to scare the Court by arguing that *Grant* will permit such outlandish and unlawful pay frequency schedules is contrary to federal and state law.

Lastly, Plaintiff argues for a reading of applicable legislative history (a novel argument never advanced in *Vega*) that rests on a strained reading of just two New York Department of Labor guidance memoranda from 1966 and 1967. Opp'n at 12. In that regard, Plaintiff appears to contend that because the term "wage payment provision" is used in connection with increasing

liquidated damages for certain violations of statute, then *any* violation of any part of Article 6 of the Labor Law (*i.e.,* the "Payment of Wages") creates a private right of action to recover liquidated damages. Opp'n at 13. This argument is unsupported as it is logically fallacious. If Plaintiff is right, then the Legislature's codification of private rights of action under Sections 198(1-b) and 198(1-d) would have been utterly superfluous because liquidated damages would *always* be triggered by violations of Section 195, which falls within the "Payment of Wages" provisions of Article 6. *See* MTD at 13. The fact that the 2010 amendments instead expressly codified private rights of action for violations of Section 195, but not of Section 191 (*Id.*), clearly demonstrates that the Legislature's intent was not so broad.[2]

## II.  This Court Need Not Join the *Grant v. Vega* Debate

Rather than join the *Grant v. Vega* chorus of conflicting non-binding federal authority, this Court is also clearly empowered to simply choose to administratively close this case without prejudice pending the outcome at the Court of Appeals. In an effort to discourage the court from exercising its routine discretion to manage its docket, Plaintiff cites the demonstrably inapposite *Rodriguez v. Gusman* (974 F. 3d 108 (2d Cir. 2020)) to create the impression that doing so impinges on some fundamental right of the litigants (which is not the standard). *See* Opp'n at 25. *Rodriguez* is inapplicable for several reasons. As an initial matter, the issue before the Second Circuit in *Rodriguez* was the standard that "guides administrative-closure decisions when *a plaintiff is unavailable.*" *Rodriguez v. Gusman*, 974 F. 3d 108, 110 (2d Cir. 2020) (emphasis added). More importantly, the stakes of administrative closure in *Rodriguez* were vastly higher:

---

[2]  Plaintiff's other Legislative intent argument - the recent refusal to amend the NYLL, as part of a broad state budgetary decision, shows an intent to provide a private right of action (*see* Opp'n at 18) - is equally misleading and, in the words of the Second Department, "dubious." *Agencies for Child's Therapy Servs., Inc. v. N.Y. State Dep't of Health*, 136 A.D.3d 122, 131-32 (2d Dep't 2015) (quoting *Bourquin v Cuomo*, 85 NY2d 781, 787-788 (1995)) ("Legislative inaction, because of its inherent ambiguity, 'affords the most dubious foundation for drawing positive inferences'").

there, the plaintiff claimed administrative closure would deprive him of his inalienable rights under the United States Constitution following his physical deportation from the United States—an immediate harm that is not easy to undo. *Id* at 110-113. Here, Plaintiff will not be unavailable to pursue his claims later, nor can he claim that deferring this litigation would irreparably deprive him of a right as urgent as the right to remain in the country physically. Plaintiff is not even claiming that he must live for now with unpaid wages, since the parties agree that he was paid all wages due and is only seeking penalties. *See* (Dkt. 1, ¶ 4); MTD at 24. At worst, administrative closure might temporarily delay Plaintiff's pursuit of a pure windfall—hardly the kind of Constitutional concern and prejudice a deportee faces. The logic of *Rodriguez* simply does not apply here.

Instead, the Court should consider the balance of judicial efficiencies. Contrary to Plaintiff's assertions, the issue of whether an employee is granted a private right of action under Section 191 is not a slam dunk. Indeed, Plaintiff tacitly acknowledges the reality that, since *Grant*, the cases go both ways. *See* Opp'n at 4 (citing *Galante v. Watermark Servs. IV, LLC*). In the absence of administrative closure, a decision by this Court on the merits of Defendant's motion will not resolve this open issue of state law, and may lead to the continuing expenditure of the Court's and the parties' time and resources on issues that could well be mooted by the Court of Appeals in short order.

As such, Defendant respectfully submits that, in the absence of a dismissal of the Complaint, the Court should exercise its discretion to administratively close this matter without prejudice pending resolution of its fundamental issue by the New York Court of Appeals.

## **CONCLUSION**

For all of the foregoing reasons, Defendant respectfully requests that this Court grant Defendant's Motion to Dismiss Counts with prejudice under Fed. R. Civ. P. 12(b)(6) or 12(b)(1) and provide any further relief this Court deems just and appropriate, or administratively close this matter without prejudice.

Dated:   New York, New York
         August 5, 2024

                    Respectfully submitted,

                    KELLEY DRYE & WARREN LLP

/s/ *Mark A. Konkel*
Mark A. Konkel
Blythe E. Lovinger
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800
Fax: (212) 808-7897
mkonkel@kelleydrye.com
blovinger@kelleydrye.com
*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that the foregoing Defendant's Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss, Administratively Close or Strike Plaintiff's Complaint was served via the Court's CM/ECF system on August 5, 2024, on the following attorneys of record:

>Yitzchak Kopel, Esq. (ykopel@bursor.com)
>Alec M. Leslie, Esq. (aleslie@bursor.com)
>Bursor & Fisher, P.A.
>1330 Avenue of the Americas
>New York, NY 10019

>*/s/ Mark A. Konkel*
>Mark A. Konkel