UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM PHOENIX, individually and on behalf of others similarly situated,

                Plaintiff,

-against-

CUSHMAN & WAKEFIELD U.S., INC.,

                Defendant.

**OPINION & ORDER**

24-CV-00965 (PMH)

PHILIP M. HALPERN, United States District Judge:

    William Phoenix ("Plaintiff") commenced this putative class action on February 8, 2024 against Cushman & Wakefield U.S., Inc. ("Defendant") asserting a single claim for violation of the New York Labor Law ("NYLL") § 191. (Doc. 1, "Compl.").

    On July 1, 2024, Defendant, pursuant to the briefing schedule set by the Court, served its motion to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, alternatively, to strike the class allegations pursuant to Rules 12(f) and 23(d) or administratively close the action without prejudice. (Doc. 16; Doc. 17, "Def. Br."). Plaintiff served his opposition on July 22, 2024 (Doc. 19, "Pl. Br."; Doc. 20), and Defendant's motion was fully briefed with the filing of its reply and all motion papers on August 5, 2025 (Doc. 21, "Reply"). Since then, both parties have filed multiple letters alerting the Court to additional legal authority concerning NYLL Section 191. (Docs. 22-29).

    For the reasons set forth below, the motion is DENIED.

## BACKGROUND

    Plaintiff alleges that he was employed by Defendant as a maintenance technician at multiple WeWork locations in Manhattan from on or about June 2023 to on or about January 2024. (Compl. ¶ 10). Plaintiff alleges that more than 25% of his job responsibilities included manual

labor, "such as replacing toilet parts, cleaning and maintaining various appliances, fixing doors, replacing filters in HVAC systems, and painting and spackling." (*Id.*). Defendant, during this period, paid Plaintiff on a biweekly schedule. (*Id.*).

Plaintiff alleges that this pay period violated Section 191, which requires employers to pay certain manual workers on a weekly basis. (*Id.* ¶¶ 19-21 (citing NYLL § 191)). As a result of this purported statutory violation, Plaintiff alleges that he was "temporarily deprived money owed to him." (*Id.* ¶ 10). This deprivation, in turn, allegedly prevented Plaintiff from "invest[ing], earn[ing] interest on, or otherwise us[ing] [] monies that were rightfully his." (*Id.*).

## STANDARD OF REVIEW

I. <u>12(b)(1) Standard</u>

Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action "when the district court lacks the statutory or constitutional power to adjudicate it." *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019).[1] "The party invoking federal jurisdiction bears the burden of establishing jurisdiction exists." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009). However, "[w]hen the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint . . . the plaintiff has no evidentiary burden," and "[t]he task of the district court is to determine whether the [complaint] 'alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue.'" *Carter v. Healthport Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). Moreover, when deciding a Rule 12(b)(1) motion, the Court "must accept as

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

2

true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Conyers*, 558 F.3d at 143.

In general, "[w]here, as here, the defendant moves for dismissal under Rule 12(b)(1), as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)). There are, of course, exceptions to this general rule; and this case presents one of these exceptions.

II. 12(b)(6) Standard

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53

(2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

III.     Rule 12(f) Standard

Rule 12(f) provides, in relevant part, that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Federal courts have discretion in deciding whether to grant motions to strike." *Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 558 (S.D.N.Y. 2023) (quoting *Capri Sun GmbH v. Am. Beverage Corp.*, 414 F. Supp. 3d 414, 423 (S.D.N.Y. 2019)). "However, motions to strike under Rule 12(f) are generally 'disfavored and granted only if there is strong reason to do so.'" *Id.* (quoting *Sweigert v. Goodman*, 18-CV-08653, 2021 WL 603069, at *1 (S.D.N.Y. Feb. 16, 2021)).

## ANALYSIS

Defendant argues that dismissal of the action is warranted because: (i) NYLL does not confer a private right of action to employees to enforce Section 191; and (ii) the Court lacks subject matter jurisdiction over this action. Alternatively, Defendant argues that (iii) the Court should strike Plaintiff's class-action allegations; or (iv) administratively close this action without prejudice pending a ruling by the New York Court of Appeals resolving a split within New York's intermediate appellate courts.

I.     NYLL Section 191

Defendant's sole argument for dismissal under Rule 12(b)(6) is that Section 191 and Section 198 of the NYLL do not confer a private right of action to employees to enforce Section

4

191. (Def. Br. at 12-27).[2] Plaintiff counters that Defendant's argument "overlook[s]" the "score of cases" rejecting that interpretation of NYLL, as well as the plain text and legislative history of these statutes. (Pl. Br. at 9; *see also id.* at 10-25).

As noted *supra*, courts generally resolve a defendant's challenge under Rule 12(b)(1) first before addressing any grounds asserted pursuant to Rule 12(b)(6). Here, Defendant argues that even if there is a viable claim for relief on liability, Plaintiff has no damages and therefore lacks the monetary component of diversity subject matter jurisdiction pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d). The jurisdictional question in this case, however, may be subsumed in Defendant's motion to dismiss under Rule 12(b)(6) if the Court first finds that Section 191 and Section 198 confer a private right of action for Plaintiff. Accordingly, the Court first addresses Defendant's arguments under Rule 12(b)(6). *See Berkovitz v. Vill. of S. Blooming Grove*, No. 09-CV-00291, 2010 WL 3528884, at *6 (S.D.N.Y. Sept. 3, 2010) ("In this case, prudent case management dictates that the Court turn first to the Rule 12(b)(6) motion."); *Waldman v. Escobar*, No. 08-CV-06405, 2009 WL 861068, at *3 (S.D.N.Y. Mar. 27, 2009) (addressing first the defendant's arguments under Rule 12(b)(6) before the defendant's jurisdictional arguments).

Section 191(1)(a), which is part of Article 6 of the NYLL, provides that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned." Section 198(1-a) permits an employee who is "paid less than the wage to which . . . she is entitled under [Article 6 of the NYLL]" to bring a "wage claim" "to recover the full amount of any underpayment." This section also allows an employee to recover "all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless

---

[2] Citations to specific pages of court filings on the docket correspond to the pagination generated by ECF.

the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages." NYLL § 198(1-a).

The First Department, in *Vega v. CM & Assocs. Constr. Mgmt., LLC*, held that these NYLL provisions, together, created a private right of action for untimely payment of wages by employers. 107 N.Y.S.3d 286, 288 (1st Dep't 2019). The *Vega* court found that the term "underpayment" in Section 198—read in its "usual and commonly understood meaning"—"encompasses the instances where an employer violates the frequency requirements of section 191(1)(a)." *Id.* That is because, the court reasoned, "[t]he moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required." *Id.* The court also spotlighted that the "remedies provided by section 198(1–a) apply to 'violations of [A]rticle 6 [of NYLL],'" and "section 191(1)(a) is a part of article 6." *Id.* at 287-88. Alternatively, the court found that a private right of action could be implied because manual workers are "one of the class for whose particular benefit the statute was enacted, the recognition of a private right of action would promote the legislative purpose of the statute and the creation of such a right would be consistent with the legislative scheme." *Id.* at 299.

The Second Department, in *Grant v. Global Aircraft Dispatch, Inc.*, reached the opposite conclusion, holding that the NYLL did not confer a private right of action for late-wage claims. 204 N.Y.S.3d 117, 125 (2nd Dep't 2024). According to the *Grant* court, such a private right of action could not be found in the plain text of Section 198. Specifically, the court concluded that the "natural import" of underpayment is "that an employee has received a lesser amount of earnings than agreed upon, not that the employee received the agreed-upon amount one week later." *Id.* at 122. The Court continued with its logic that because Section 198(1-a) provides for liquidated damages as an "additional amount," the provision's plain text further demonstrated that

6

it "clearly contemplate[es] recovery of an underpayment as the primary, foundational remedy." *Id.* Similarly, the court also found that Section 198(1-a)'s legislative history cuts against finding a private right of action for a violation of Section 191. The legislation, according to *Grant*, was "aimed at remedying employers' failure to pay the amount of wages required by contract or law," and "[t]here is no reference in the legislative history" to "the frequency or timing of wage payments." *Id.* at 125. Finally, because New York's legislature already provides "multiple official enforcement mechanisms for violations of Labor Law § 191," the court held that no private right of action could be implied for pay frequency violations. *Id.* (citing *Konkur v. Utica Acad. of Sci. Charter Sch.*, 38 N.Y.3d 38, 42 (2022)).

*Grant* thus created a split within New York's intermediate appellate courts about whether Section 191 and Section 198 provide a private right of action to enforce late-wage claims. The New York Court of Appeals has not yet resolved this split. Accordingly, "this Court's task is to 'predict how the [Court of Appeals] would resolve the uncertainty or ambiguity' from the conflicting appellate decisions." *Gamboa v. Regeneron Pharms., Inc.*, 719 F. Supp. 3d 349, 354 (S.D.N.Y. 2024) (alteration in the original; quoting *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 499 (2d Cir. 2020)).

Although neither the Second Circuit nor the New York State Court of Appeals have opined on the issue, various courts in this Circuit have considered whether manual workers, as defined by the NYLL, have a private right of action to enforce violations of Section 191(1)(a). Judge Briccetti analyzed this issue in a thorough and well-reasoned decision that was the first in this District to address the split created by *Grant*. *See Zachary v. BG Retail, LLC*, 716 F. Supp. 3d 339 (S.D.N.Y. 2024). After meticulously examining *Vega* and *Grant*, as well as the relevant NYLL provisions, the court concluded "that the [New York State] Court of Appeals would likely agree with *Vega*

and reject *Grant*." *Id.* at 350. With respect to the text of Section 198, the court explained that although it "does not explicitly reference late wage payments, its text authorizes employees to bring 'wage claims' for 'underpayment[s]' violative of article 6 of the NYLL, and article 6 includes the pay frequency requirements in Section 191." *Id.* The court continued: "[i]n fact, the plain language of Section 191 discredits the *Grant* court's view that Section 198's enforcement mechanism is not triggered when an employer and manual worker agree to a biweekly payment schedule[] [because] NYLL Section 191(2) provides that '[n]o employee shall be required as a condition of employment to accept wages at periods other than as provided in this section.'" *Id.* The court found that Section 198's legislative history likewise favored finding a private cause of action. In particular, "the stated legislative purposes of the 2010 amendments [to Section 198]— *i.e.*, to enhance penalties for wage theft and benefit low-wage workers struggling to support their families—are unquestionably better served by a private right to enforce Section 191 than by requiring injured employees to submit administrative complaints and hope for an official enforcement action." *Id.*

The court also sided with *Vega* that a late wage claim under Section 191 is privately actionable as an implied cause of action. *Id.* According to the court, *Grant* was wrong to rely on *Konkur*, 38 N.Y.3d at 38, to conclude that the "creation of an implied private right of action would be inconsistent with the legislative scheme." *Id. Konkur*, the court in *Zachary* explained, "analyze[d] a wholly separate provision in the NYLL," and, in fact, "distinguished" that separate provision "from the substantive provisions of Labor Law article 6, like Section 191." *Id.*

Since *Zachary*, six other courts within this District have considered the issue and have all sided with *Vega*. *See Espinal v. Sephora USA, Inc.*, No. 22-CV-03034, 2024 WL 4241537, at *4 (S.D.N.Y. Sept. 19, 2024), *reconsideration denied*, 2024 WL 4751279 (S.D.N.Y. Nov. 12, 2024);

8

*Carrasquillo v. Westech Sec. & Investigation Inc.*, No. 23-CV-04931, 2024 WL 4227795, at *6 (S.D.N.Y. Sept. 17, 2024); *Charles et al. v. Aritzia*, No. 23-CV-09389, 2024 WL 4167502, at *5 (S.D.N.Y. Sept. 12, 2024); *Bryant v. Buffalo Exch., Ltd.*, No. 23-CV-08286, 2024 WL 3675948, at *3 (S.D.N.Y. Aug. 6, 2024); *Gamboa*, 719 F. Supp. 3d at 354–55; *Sarmiento v. Flagge Contracting Inc.*, No. 22-CV-09718, 2024 WL 806137, at *9–10 (S.D.N.Y. Feb. 27, 2024), *adopted by*, 2024 WL 1908607, at *1 (S.D.N.Y. May 1, 2024). Nearly every other court within this Circuit has ruled the same way. *See generally Espinal*, 2024 WL 4241537, at *4 (collecting cases). Indeed, to date, only two district courts within this Circuit have sided with *Grant*. *See Galante v. Watermark Servs. IV, LLC*, 722 F. Supp. 3d 170 (W.D.N.Y. 2024); *Freeland v. Findlay's Tall Timbers Distribution Ctr., LLC*, No. 22-CV-06415, 2024 WL 4652251, at *2 (W.D.N.Y. Nov. 1, 2024) (adopting *Galante*'s reasoning).[3]

Defendant asks the Court to depart from this substantial precedent—labeling all of these decisions as "flaw[ed]" (Def. Br. at 22)—and hold that neither Section 191 nor Section 198 confer an express or implied private right of action upon employees for violations of Section 191(1)(a). The Court declines to do so. Defendant has offered no persuasive argument for the Court to abandon the near-unanimous view by courts within this Circuit that have weighed in on the *Vega*/*Grant* split. Nor does Defendant meaningfully distinguish any of those cases from this action. (*Contra id.* at 26). The Court thus adopts the reasoning of the overwhelming majority of courts in this District finding that manual workers, as defined by the NYLL, have both an expressed and

---

[3] The Magistrate Judge, in a Report and Recommendation issued in *Espinal v. Sephora USA, Inc.*, also sided with *Grant*, but the district court declined to adopt that Report, holding that a private right of action is available to plaintiffs under the NYLL to pursue late-wage claims. No. 22-CV-03034, 2024 WL 3589604, at *6 (S.D.N.Y. July 31, 2024), *rejected by*, 2024 WL 4241537 (S.D.N.Y. Sept. 19, 2024).

implied private right of action to enforce violations of Section 191(1)(a). That express or implied right of action includes the statutorily required remedy by Section 198(1-a).[4]

Accordingly, Defendant's motion is denied with respect to its argument that Plaintiff lacks a private right of action.

II.    Subject Matter Jurisdiction

Defendant next argues that the Court lacks subject matter jurisdiction under 28 U.S.C. § 1332(d). According to Defendant, permitting liquidated damages as required by Section 198(1-a) would violate the Due Process Clause of the Fourteenth Amendment. (Def. Br. at 28-30). Thus, Defendant argues, "there are no underlying damages in this matter" because Plaintiff relies exclusively on his demand for liquidated damages under Section 198(1-a) to meet the amount-in-controversy requirement. (*Id.* at 27). Plaintiff responds that "Defendant's request that the Court declare unconstitutional a yet-to-be-rendered, hypothetical award" is "premature." (Pl. Br. at 29). The Court agrees with Plaintiff.

Courts, in determining whether a punitive damages award violates the due process clause, apply the three "guideposts" test laid out in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996). *See Thomas v. iStar Fin., Inc.*, 652 F.3d 141, 148 (2d Cir. 2011). Courts consider: "(1) the degree of reprehensibility of the defendant's misconduct, (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award, and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable

---

[4] The Court therefore rejects Defendant's argument that liquidated damages should not be permitted here because it would lead to "absurd results" through a "windfall recovery." (Def. Br. at 28). The plain text of Section 198 permits "liquidated damages equal to one hundred percent of the total amount of the wages found to be due." NYLL § 198(1-a). And the "NYLL's liquidated damages provision, like that of the FLSA, inherently overcompensates the plaintiff, and often dramatically, relative to her actual economic loss." *Espinal*, 2024 WL 4241537, at *4 n.3. The Court will not disregard the New York legislature's judgment about the best way to protect workers' rights.

cases." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 409 (2003) (citing *Gore*, 517 U.S. at 575); *see also Rodrigue*, 2021 WL 3848268, at *6 (analyzing defendants' challenge to a liquidated damages award for a violation of Section 191 under the *Gore* "guideposts").

Here, there have been no damages awarded yet. The Court thus lacks a basis to compare the "disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award." *Campbell*, 538 U.S. at 409. Nor is there, at this stage of the action, a record to assess the "degree of reprehensibility of the defendant's misconduct." *Id*. As such, "Defendant's argument that imposing liquidated damages violates due process because such a remedy would be unconstitutionally excessive is premature." *E.g.*, *Macchiavello v. ABB/CON-CISE Optical Grp. LLC*, No. 22-CV-08468, 2023 WL 4625009, at *4 n.4 (S.D.N.Y. July 19, 2023).

The Court therefore lacks a basis, on this record and accepting as true all material facts alleged in the Complaint and drawing all reasonable inferences in Plaintiff's favor, to conclude that the Court lacks subject matter jurisdiction under 28 U.S.C. § 1332(d). Defendant may renew its motion after developing "an adequate factual basis upon which to adjudicate the issue." *Armstrong v. McAlpin*, No. 76-CV-04155, 1978 WL 1058, at *10 (S.D.N.Y. Jan. 26, 1978) (denying "all motions addressed to subject matter jurisdiction . . . at this time"); *see also Bruccoleri v. Gangemi*, No. 17-CV-07443, 2019 WL 8405573, at *2 (E.D.N.Y. Mar. 15, 2019) ("It should be emphasized that the denial of a motion to dismiss on grounds of lack of diversity jurisdiction does not necessarily spell the end of the issue. It means only that, *at this stage in the proceedings*, the Court finds [diversity jurisdiction]. . . . Defendant will be permitted to conduct reasonable discovery on the issue . . . and may renew the branch of the motion pertaining to subject matter jurisdiction[.]"). The Court also has a "continuing obligation to ensure its own subject matter jurisdiction." *Lucker v. Bayside Cemetery*, 262 F.R.D. 185, 188 (E.D.N.Y. 2009) (cleaned up);

Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Accordingly, Defendant's motion that the Court lacks subject matter jurisdiction is denied.

III.    Motion to Strike Class Allegations

Alternatively, Defendant moves to strike Plaintiff's class allegations because the class purportedly comprises an impermissible "'fail safe' class," and the class is defined in a way that would not plausibly lead to "general common answers to drive the resolution of this litigation." (Def. Br. at 31-33). Plaintiff again responds that this argument is premature. (Pl. Br. at 32).

"A 'fail-safe' class is a class 'whose definition shields the putative class members from receiving an adverse judgment' because 'the class itself is defined in a way that precludes membership unless the liability of the defendant is established.'" *Charles v. United States of Aritzia Inc.*, No. 23-CV-09389, 2024 WL 4167502, at *6 (S.D.N.Y. Sept. 12, 2024) (quoting *Mazzei v. Money Store*, 288 F.R.D. 45, 55 (S.D.N.Y. 2012)). "Courts faced with a putative fail-safe class have 'broad discretion to modify the class definition as appropriate.'" *Id.* (quoting *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 463–64 (S.D.N.Y. Feb. 28, 2018)). It is well-established, however, that "a determination of whether the Rule 23 requirements are met is more properly deferred to the class certification stage, when a more complete factual record can aid the Court in making this determination." *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012) (collecting cases).

To begin, Defendant's argument that the proposed class will not "generate common answers to drive the resolution of this litigation" (Def. Br. at 32)—which would require the Court to assess whether this class satisfies Rule 23's requirements—is premature. Similarly, "[t]he question of whether the class allegation constitutes a 'fail-safe' class" is also "be[tter] resolved at

the class certification stage." *Pozo v. BlueMercury, Inc.*, No. 22-CV-07382, 2023 WL 4980217, at *8 (S.D.N.Y. Aug. 3, 2023) (collecting cases). To that end, "whether a particular employee is a manual worker because physical tasks comprise at least twenty-five percent of their duties bears on whether the putative class satisfies the commonality and predominance requirements of Rule 23." *Zachary*, 716 F. Supp. 3d at 352.

Accordingly, Defendant's motion to strike Plaintiff's class allegations is denied, and Defendant may revisit this argument after developing the record. *See, e.g.*, *Carrasquillo*, 2024 WL 4227795, at *10 (S.D.N.Y. Sept. 17, 2024) (denying as premature the defendant's motion to strike plaintiff's class allegations that the defendant failed to pay weekly wages required under Section 191).

IV.   Administrative Closure

Finally, Defendant urges the Court to forego the "*Grant v. Vega* [d]ebate" and administratively close this action without prejudice pending a ruling by the New York Court of Appeals resolving the Appellate Department split. (Reply at 7; *see also* Def. Br. at 30-31). Whether to administratively close a matter is left to the sound discretion of the trial court. *See Abreu v. Thomas*, No. 17-CV-01312, 2019 WL 11157245, at *1 (N.D.N.Y. July 19, 2019) ("Administrative closure is a docket management device[.]").

Several courts within this District have issued stays of Section 191 actions pending a decision from New York Court of Appeals. *See, e.g.*, *Mayors, v. Port Imperial Ferry Corp., Defendant.*, No. 24-CV-06815, 2025 WL 34830, at *1 (S.D.N.Y. Jan. 3, 2025) (documenting the "divide[]" of district courts within this Circuit over "whether to issue a stay pending decision in *Grant*"). Nevertheless, this Court, in its discretion, declines to administratively close this action. Defendant has offered no persuasive reason to delay this litigation. Any decision by the Court of

Appeals may be "far off, and it's not even certain that there will be one." *Bryant*, 2024 WL 3675948, at *6; *see also Covington v. Childtime Childcare, Inc.*, No. 23-CV-00710, 2024 WL 4792870, at *2 (N.D.N.Y. Nov. 13, 2024) (denying the defendant's motion to stay discovery pending a decision of the New York Court of Appeals resolving the *Vega/Grant* split and explaining that any "possible waste of resources of the court" is "outweighed by the overarching concern of extended delay and its impact on the plaintiff's right to proceed and this court's docket"). If the Court of Appeals resolves the Appellate Department split during the pendency of this action, the parties may make whatever applications they deem appropriate at that time.

Accordingly, Defendant's request to administratively close this action is denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion is DENIED.

Defendant is directed to file an answer to the Complaint within 14 days of the date of this Order. The Court will separately docket a Notice of Initial Conference.

The Clerk of Court is respectfully requested to terminate the pending motion at Doc. 16.

SO ORDERED.

Dated:  White Plains, New York
        January 31, 2025

_____
PHILIP M. HALPERN
United States District Judge